## WILLIAMS v. HALFORD.

1. EVIDENCE DE BENE ESSE.—NOTICE to take testimony *de bene esse* on 23d, served on 13th, is sufficient.
   MR. JUSTICE GARY *dissents.*

2. PARTITION—EQUITY—NONSUIT—HUSBAND AND WIFE—MISTRESS—ILLEGITIMATE CHILDREN—CHILDREN.—Action by wife and child against illegitimate children for three-fourths value of lands conveyed by father to mistress and by her to illegitimate children, is one in equity, and issue of title on the pleadings is not properly submitted to jury. Court in such case may submit issues to jury out of equity; but issue, "Whether or not plaintiffs are entitled to par-

tition of the lands described in the complaint," is not proper, and it is error to grant nonsuit in trial of such issue, because: (1) there was evidence tending to support the material allegations of the complaint; and (2) the cause is one in equity.

Before WATTS, J., Colleton, November, 1900.    Reversed.

Action by Julia Williams and J. H. Williams against J. R., B. F., J. W. and J. W. Halford, Harriett Turner, Laura Abbott and John Block. From order granting nonsuit, plaintiffs appeal.

*Messrs. Griffin & Padgett,* for appellants, cite: *As to time noticed of taking evidence de bene esse:* Rev. Stat., 2345; 26 Ency., 4; 22 Ala., 494; 1 Ore., 194; 37 Mo., 574; 22 N. H., 269; 1 Pick., 485; 19 Wend., 87; 40 Pa., 372; 8 Neb., 360; 10 Rich., 395; 52 S. C., 528; 50 S. C., 23; 43 S. C., 173. *Error to grant nonsuit in suit for partition:* 22 S. C., 332; 57 S. C., 293; 63 S. C., 266; 47 S. C., 307; 47 S. C., 446; 54 S. C., 115. *It is error to grant nonsuit where there is evidence tending to support allegations of complaint:* 22 S. C., 1; 50 S. C., 25, 548; 52 S. C., 218; 54 S. C., 115; 62 S. C., 1; 61 S. C., 404, 345, 556, 215; 60 S. C., 149, 201.

*Messrs. Howell & Gruber,* contra, cite: *Time of notice to take testimony de bene esse sufficient:* 43 S. C., 173. *Order of nonsuit is proper in this case:* 47 S. C., 446; 29 S. C., 49. *Exception 3 is too general:* 54 S. C., 409. *Plaintiffs must show that lands in question constituted more than one-fourth value of estate of Halford:* 3 Rich. Eq., 80; 2 Strob. Eq., 184.

July 11, 1902. The opinion of the Court was delivered by

MR. JUSTICE POPE. It is established by the testimony in this case that one J. J. Williams, in the year 1852, while residing in the State of Florida, was married to one Julia Albritton, a resident of that State, and that the fruits of that marriage were one son, the plaintiff, J. H. Williams, and two

daughters, both of whom (the daughters) died.    That the husband and wife lived together as man and wife until some time in the year 1858 or 1859, when the said husband, J. J. Williams, deserted his family in destitute circumstances, and removed to the State of South Carolina, in which latter State he lived for many years, to wit: from 1859 to the year 1896, when he died.    That in the year 1860, the said J. J. Williams, having changed his name to J. J. Halford, under cele-bration of marriage, took as his wife one Jane Crosby, with whom he cohabited until her death in or about the year 1894. Of this cohabitation the said Jane bore the said J. J. Halford, *alias* Williams, six children—one of whom died; which children bore and still bear his name.    That the said James J. Halford, *alias* Williams, when he removed from the State of Florida to this State, had in his possession some $250 or $300 in gold coin.    J. J. Halford, *alias* J. J. Williams, was a very industrious man, being a blacksmith and wheelwright. That he plied his trade till the date of his death, though in the last few years of his life he was stricken with paralysis. The testimony points out that the treatment of his last al-leged wife and her children was all that could be desired; he cared for their education, and when two of the boys, Jas. and B. F., were old enough, he took them into his shop and taught them his trade, as well as afterwards employing them in his establishment.    That in the year 1878 or 1879, the son, J. H. Williams, from the State of Florida, came to see his father, J. J. Halford, *alias* J. J. Williams, being received and introduced as his son into his family, where he re-mained for about one year.    That J. J. Williams, *alias* Hal-ford, never, so far as the testimony discloses, told any one why he deserted his wife in Florida; but the sequel possibly discloses the cause of his leaving her to have been her infi-delity to her marital vows, for she bore several children after he left her.    He never denied his first marriage and the paternity of J. H. Williams.    That in the year 1871, J. J. Williams, *alias* Halford, for love and affection and $5, con-veyed by deed to the second alleged wife, Jane Crosby, under

the name of Jane Halford, as his wife, 200 acres of land in
Colleton County, also a sorrel mare colt, one buggy, one
cart, thirteen head of stock cattle, thirty head of hogs, the
tools of his trade, all his household and kitchen furniture,
and also her distributive share of the estate of her father,
the late Jacob Crosby, for and during her natural life; then
to be given to the children born to him by the said Jane
Halford, share and share alike, with the power in said Jane
Halford, *alias* Jane Crosby, to sell or exchange any of said
property, and invest the proceeds thereof in other property
of any kind, all of which shall be subject to the provisions of
this deed.    That the testimony shows that the said Jane Hal-
ford, *alias* Jane Crosby, was very poor when the marriage
ceremony was performed between herself and J. J. Williams,
*alias* J. J. Halford, and that apart from the property given
to her by her husband, she only received after her marriage
$25.    That under the contract and control of the said
J. J. Williams, *alias* Halford, in December, 1880, Miner C.
Carter, at the price of $700, conveyed fifteen acres of land
in the town of Walterboro, in Colleton County, S. C., unto
the said Jane Halford, *alias* Crosby, whereon J. J. Halford,
*alias* Williams, dwelt with the said Jane as his wife, and her
children, until her death, and whereon were located his shops
as blacksmith and wheelwright; and that the said Jane Hal-
ford, *alias* Crosby, in the year 1881, by deed, conveyed this
fifteen acres of land to her children, reserving to herself a life
estate therein.    That one A. S. Barnes, in December, 1882,
conveyed to J. J. Halford, *alias* Williams, at the price of
$100, a small tract of land containing fifteen acres, in the
county of Colleton, S. C.    That by deed made 2d May,
1892, J. J. Halford, *alias* J. J. Williams, conveyed, at the
alleged price of $400, to his alleged wife, Jane Halford, *alias*
Jane Crosby, all of his estate, real and personal, now or
hereafter possessed.    That J. J. Halford, *alias* J. J. Wil-
liams, in the year 1893, in consideration of $100 paid by him,
received a quit-claim deed from Mrs. Jane E. Bellinger to
the fifteen acres in the town of Walterboro, already conveyed

to Mrs. Jane Halford, *alias* Jane ·Crosby.   That it was an-
nounced by the plaintiffs that by their present suit they only
sought the fifteen acres in Walterboro and the Barnes tract
of fifteen acres in the county.   An action was brought by the
first wife and J. H. Williams, as plaintiffs, in November,
1896, against the five children of Jane Halford, *alias* Jane
Crosby, and one John Black, to receive three-fourths of the
fifteen acres in Walterboro and of the Barnes tract of fifteen
acres in the county, alleging that the defendants, as the ille-
gitimate children of said J. J. Williams, *alias* Halford,
owned the other one-fourth interest in said lands; this action
was for partition.   Of course, the complaint alleged the
foregoing history of the parties, claiming that the first mar-
riage in 1852 was the only marriage and that of 1859 or
1860 was merely pretensive.   The answer of the defendants
denied all the facts set out in the complaint and then a second
defense alleged :

"That neither plaintiffs, nor their ancestors nor prede-
cessors nor grantors, were seized or possessed of the prem-
ises described in the complaint within ten years last past
before the commencement of this action.

"2. That these defendants' ancestress, Jane Halford, under
whom they claim, entered into possession of the premises
described in the complaint under claim of title exclusive of
any other right, founding such claim upon a written instru-
ment, as being a conveyance of the premises in question, and
that there has been a continued occupation and possession by
the said Jane Halford of the premises included in such
claim, for more than ten years last past before the com-
mencement of this action and before the death of the said
Jane Halford.

"3. That while in actual occupation and possession of the
said lands as aforesaid, the said Jane Halford, now deceased,
during the entire term of her occupancy of more than ten
years before her death, improved the said premises and pro-
tected much of it by substantial inclosures; and that each of
the several lots or tracts described in the complaint were

partly improved by the said Jane Halford, while she was in actual possession thereof, and as to the portions thereof not cleared and not cultivated, the same was so left uncleared and uncultivated according to the usual course and custom of the adjoining country."

The cause came on for trial before Judge Watts and a jury at the November term, 1900, of the Court of Common Pleas for Colleton County, S. C. The pleadings were read, and "The Court then stated that the question he would submit to the jury was, whether or not the plaintiffs were entitled to partition of the lands described in the complaint." At the trial, the facts brought out by the plaintiffs' witnesses were as substantially embodied in our sketch of the case. At the close of plaintiffs' testimony, counsel for defendants made motion for a nonsuit. In granting it, his Honor, Judge Watts, said:

"The Court: How much is in dispute? Counsel for plaintiffs: Two tracts (the fifteen acres in Walterboro). The Court: Gentlemen, you have given me about the toughest nut to crack that I have had in a long time. From the testimony in this case, there is no question in my mind that the Bellinger tract, or the tract over there, ought not to go to the jury, and I grant a nonsuit so far as that is concerned, because the testimony shows that Mrs. Carter conveyed to Mrs. Halford, and later a quit claim deed was given to her husband by Mrs. Bellinger, then afterwards he conveyed to her, and that gives her a good title to that. If a man conveys by title property he has no title to and he afterwards gets title to it, that is a good title. If a man conveys property he has no title to and afterwards acquires title to it, then title passes. I will grant a nonsuit as to this town property of fifteen acres, but I don't think under the pleadings they are entitled to recover any of the county property; but I will allow them to amend their complaint so as to add that they be required to account for three-fourths of this county property. Mr. Gruber: That ruling, I understand, would end the present hearing? The Court: Yes."

26—64

After entry of judgment the plaintiffs appealed therefrom on the following grounds:

"I. For that his Honor, R. C. Watts, erred in withholding and in refusing to admit the testimony taken *de bene esse* of Julia Williams to go to the jury, and in holding that ten days' notice had not been given the respondents.

"II. For that his Honor erred in granting a nonsuit in this action, the same being a suit on the equity side of the Court.

"III. For that his Honor erred in holding that it was necessary to amend the complaint to recover, under sec. 1887 of the Revised Statutes, as indicated in *Hull* v. *Hull,* 5 Rich. Eq.

"IV. That his Honor erred in holding that there was no evidence to go to the jury, and in granting a nonsuit."

We will consider these exceptions. *First.* We think the Circuit Judge was in error when he refused to allow the testimony taken *de bene esse* of Mrs. Julia Williams to be admitted; the sole ground of objection being that ten days had not elapsed between the date of notice served and the date at which the testimony was taken. The notice was served on the 13th day of November, 1900, and testimony was taken on 23d day of November, 1900. Our Revised Statutes provide as follows on this subject: Sec. 2345 * * * "Reasonable notice, not less than ten days, must first be given in writing by the party or his attorney, proposing to take depositions to the opposite party or his attorney of record, as either may be nearest." Fractions of days are not recognized in our laws. Our Code of Civil Procedure, at sec. 407, provides: "The time within which an act is to be done as herein provided, shall be computed by excluding the first day and including the last. If the last day be Sunday, it shall be excluded." Excluding the 13th and including the 23d, makes ten days as the notice given, which is a compliance with the statute. This ground of exception is sustained.

We will next consider out of its order the fourth exception. Supposing for the present moment that such issues

as are raised by the parties litigant here should be governed by the verdict of a jury, we think the Circuit Judge was in error in holding that there was no testimony on the material issues involved.    It is clear to our minds that the testimony tended to establish the first marriage between J. J. Williams and Julia Williams, in the year 1852, and the birth of the coplaintiff, J. H. Williams, as the issue of that marriage; also that J. J. Williams, *alias* Halford, attempted to marry Jane Crosby in 1859 or 1860, while his wife was living.    That J. J. Williams and Jane Crosby cohabited as husband and wife, but that really in law she was his kept mistress, and that the defendants are the issue of that illicit cohabitation; that Jane Crosby was very poor, never inheriting but $25.    That J. J. Williams, *alias* Halford, gave her all he had from time to time twice by deed. That the said J. J. Williams made the trade for his concubine, Jane Crosby, *alias* Halford, for the fifteen acres of land in Walterboro, although the deed was made to her.    That Williams, *alias* Halford, had as his purpose to give his property to his mistress and through her to her children. This purpose Jane Crosby by deed endeavored to consummate.    So that there was testimony, if the jury should accept it, on all these material issues.    The case should have gone to the jury.    The Circuit Judge was in error in granting the nonsuit.

We will now consider the second and third exceptions.    It has been the settled purpose of the law-making power of this State to prevent a man from giving away or conveying to his mistress and his illegitimate children more than one-fourth of his estate, real and personal, for nearly two centuries.    As cited by the Circuit Judge and the parties to the action, the section of the Revised Statutes of 1893 was numbered 1887, but under the new codification of our laws by Mr. W. H. Townsend, it is numbered "Sec. 2368," and is as follows: "Sec. 2368. If any person who is an inhabitant of this State, or who has any estate herein, shall have already begotten or shall hereafter beget any bastard child, or shall live in adul-

tery with a woman, the said person having a wife or lawful children of his own living, and shall give, or settle, or convey, either in trust or by direct conveyance, by deed of gift, legacy, devise, or by any other ways or means whatsoever, for the use and benefit of the said woman with whom he lives in adultery, or of his bastard child or children, any larger or greater proportion of the real clear value of his estate, real or personal, after payment of his debts, than one-fourth part thereof, such deed of gift, conveyance, legacy or devise, made or hereafter to be made, shall be null and void only in favor of wife and legitimate children for so much of the amount or value thereof as shall or may exceed such fourth part of his real and personal estate." The words are carefully selected : "shall give, or settle, or convey, either in trust or by direct conveyance by deed of gift, legacy, devise, or *by any other ways or means whatsoever."* Their meaning is not to be mistaken. The law intends to uproot at the instance of the lawful wife and children any plan or devise of the husband and father to give more than one-fourth of his estate to his paramour and bastard children. Whoever undertakes this circumvention of the lawful wife and children, or either one of them, undertakes to commit a fraud upon this statute. If the lawful wife and child set on foot proceedings in the Courts of the country to upset such illegal contrivances, he usually proceeds upon the equity side of the Court of Common Pleas, because he, or she, or they, do not and cannot set aside absolutely deeds of conveyance for the benefit of the mistress or bastard children by the husband and father. All that can be done is to have such rights of the lawful wife and children or child, as the case may be, to three-fourths of the estate of the husband and father set apart to them, leaving the other one-fourth in the possession of the mistress or bastard child or children, as the case may be. The attempt to invalidate the statute (sec. 2368) is a fraud upon said statute. To divide lands between parties owning the same in different quantities is to partition lands. Frauds and partition belong to what is known as the equity side of the Court

of Common Pleas. This does not prevent the Circuit Judge from framing issues for trial by jury. The case at bar furnishes an apt illustration of issues to be sent down for trial by a jury. These issues may have been sent. Was the plaintiff, Julia Williams, ever married to James J. Williams, in the year 1852? Is the coplaintiff, J. H. Williams. the lawful son of the said James J. Williams? So, also, other issues might have been sent down by the Circuit Judge for trial by a jury. The whole, however, was not properly a jury case—a case on the law side of the Court. Not being an action on the law side of the Court, the Circuit Judge erred in granting a nonsuit as a matter of law. So far as the Circuit Judge's order directed an amendment of the complaint, usually, we would hold that to be no error, but as he made that order in granting a nonsuit, we will set it aside. We sustain the second and third grounds of appeal.

It is the judgment of this Court, that the judgment of the Circuit Court be and the same is hereby reversed, and the action is remanded to the Circuit Court for trial.

MR. JUSTICE JONES *concurs in the result.*

MR. JUSTICE GARY *concurs* in the result, but *dissents* from so much of the opinion as sustains the 1st and 3d exceptions. The commission to take the testimony was executed within ten days after service of the notice; therefore, the opposite party was not allowed the time prescribed by the statute. The views expressed by Mr. Justice Pope are at variance with the decided cases in this State.